## DAVIS *et al.* v. JEFFRIS.

1. Whether or not a stipulation or covenant is dependent or independent must be determined from the terms of the contract, the rule being that such stipulation or covenant will be construed as dependent unless a contrary intention appears by the terms of the contract.

2. In a contract for the construction of a creamery and cold storage building—the contractors agreeing to furnish all material and labor, and the cold storage being constructed under the McCray patent—a stipulation by which the contractors "agree to furnish with said contract a patent deed from the McCray Refrigerator Company, * * * conveying all the rights under said patents," is a dependent stipulation; and the contractors cannot recover the amouut agreed to be paid by the subscribers to the contract, in the absence of proof that said patent deed has bcen furnished or tendered to the subscribers.

(Syllabus by the Court.   Opinion filed April 26, 1894.)

Appeal from circuit court, Beadle county.  Hon. E. G. SMITH, Judge.

Action to recover upon a contract.   Judgment for defendant.   Plaintiffs appeal.   Affirmed.

The facts are stated in the opinion.

*A. B. Melville*, for appellant.

The covenant in the instrument sued upon, to furnish a patent deed, was an independent covenant not to be performed until after payment was made by the defendants for the building.   Tompkins v. Elliott, 5 Wendell 496; Bennett v. Paxley, 7 Johnson 249; 2nd Parsons on Contracts, 676, 677 and 525; Pollock v. Brush Electric Light Association, 128 U. S. 32; Law Co-op. Rep. 373; White v. Lee, 14 Fed. 799.   The defendants cannot complain of the non-fulfilment of this independent until they have been injured.   McKay v. Jackman, 17 Fed. 641; 30 Fed. 530; Bordwell v. Cooley, 45 N. Y. 494; Greenvault v. Davis, 4 Hill 645; 17 Ill. 190; 2 Greenleaf 243 and 244; Story on

Sales, 4th Edition, 360; 3 Washburn's Real Property 474 and 478; 82 U. S. 95.

*F. Vollrath,* for respondent.

That part of the contract in suit providing for the furnishing to said defendants of a patent deed is a dependent covenant in the contract, which plaintiffs must show they have fulfilled before they can recover. Martus v. Houck, 33 Am. Rep. 409; Coos Bay Wagon Co. v. Crocker, 4 Fed. Rep. 583; Darland v. Greenwood, 2 Fed. Rep. 660; Smith v. Lewis, 26 Conn. 109; Clark v. Weiss, 29 Am. Rep. 60 (87 Ill. 438); Bank of Columbia v. Hagner, 1 Peters 1; Galvin v. Prentiss, 6 Am. Rep. 58, (45 N. Y. 162); Dunham *et al.* v. Pettee *et al.*, 4 Seld. 508; Williams v. Healey, 3 Denio 363; Rider *et al.* v. Pond, 18 Barb. 179; Grant v. Johnson, 1 Selden, 247; Parker v. Parmele, 20 Johnson 130; Lester v. Jewett, 1 Kernan, 453; Kane v. Hood, 13 Pick. 281; Swan v. Drury *et al.*, 22 Pick. 485; Dobson v. Pearce, 12 N. Y. 165; Harmon v. Bingham, 2 Kernan 106; Adams v. Nichols, 19 Pick. 275.

CORSON, P. J. This action was founded upon a contract entered into by the plaintiffs with thirteen subscribers, of which the defendant was one, to erect a creamery and cold-storage building at the city of Huron, and furnish all the material and labor, for the sum of $6,500, to be paid for on completion of the building. The cold-storage department was to be constructed under the McCray cold-storage and refrigerator patents. Each of the thirteen subscribers to the contract agreed to pay $500. There are a number of stipulations in the contract not necessary to be given, and we select such, only, as we deem material to a determination of the controversy, which are as follows: "The cold-storage department is 30x40 feet, and built and fitted up according to, and under, the McCray cold storage and refrigerator patents, the general plan of which is shown on plans. * * * And the ice department

built as per shown on plans, and according to the McCray patents, and the entire building is to be covered with iron roofing.    Said building has a capacity for storing 300 to 1,000 barrels.    We also agree to furnish with said contract a patent deed from the McCray Refrigerator Company, of Kendallville, Indiana, conveying all the rights under said patents.    *    *    * We, the subscribers hereto, parties of the second part, agree to pay the amount set opposite our respective names for said creamery and cold storage when completed.    *    *    *'' The complaint is in the usual form, and contains a copy of the contract.    The answer is a general denial, and contains certain affirmative defenses not now necessary to be considered.    The abstract contains the following statement: ''Plaintiffs failed to adduce any proof or evidence that they had furnished, or offered to furnish, defendant, or any of the subscribers to said contract, a patent deed from the McCray Refrigerator Company, of Kendallville, Indiana, provided for in the contract in suit, conveying all the rights under said patent.    Nor was any such proof or evidence offered or introduced, showing any excuse why the same was not offered or furnished.''

The defendant, at the close of the plaintiffs' evidence, and again at the close of the whole evidence, moved the court to direct a verdict for the defendant upon the ground that plaintiffs had failed to make this proof.    A decision on this question was reserved by the court.    The verdict being for the defendant, no decision was directly made upon the motion.    The counsel for the respondent, however, insists that the failure to make such proof was fatal to plaintiffs' right to recover, and hence it does not become necessary to consider appellants' assignment of error.    We are of the opinion that counsel is correct.    If plaintiffs, under the evidence, could not have recovered in the action, this court is not called upon to discuss or consider the errors assigned, as the judgment must necessarily be affirmed.    We shall therefore proceed to consider this question.

The appellants contend that the stipulation to furnish the patent deed from the McCray Refrigerator Company was an independent stipulation or covenant, and that the plaintiffs were not required to prove that they furnished or tendered such a patent deed, to entitle them to recover on the contract. We are unable to concur in this view. It will be noticed that, from the nature of the contract, the part of it relating to the cold-storage was an important and essential part, and was to be constructed under the McCray cold-storage and refrigerator patents. The right to use the property so constructed under the patent must, we think, be regarded as an important element in the contract, to the subscribers; and the intention, therefore, of such subscribers must have been to secure that right, as a part of their contract. Hence, the stipulation is that plaintiffs should furnish a patent deed with said contract, or, to use the precise language of the contract, "We agree to furnish with said contract a patent deed from the McCray Refrigerator Company, * * * conveying all the rights under said patents." The contract, also, as will be observed, provides that the subscribers agree to pay for said creamery and cold-storage when completed. Was it completed until the patent deed was furnished? We are of the opinion it was not, and that the agreement to furnish the patent deed was essential to the completion of the contract, and that proof of the same was necessary, to entitle the plaintiffs to recover. Whether or not a covenant is dependent or independent must be ascertained from the contract and attending circumstances, the rule being that such covenants will be construed as dependent unless a contrary intention appears from the terms of the contract. In the early case of President, etc., v. Hagner, 1 Pet. 455, the supreme court of the United States states the rule as follows: "Admitting, then, that a contract was entered into between the parties, the inquiry arises whether the plaintiffs have shown such a performance on their part as will entitle them, in a court of law, to sustain an action for the recovery of the pur-

chase money. In contracts of this description the undertakings of the respective parties are always considered dependent unless a contrary intention clearly appears. A different construction would in many cases lead to the greatest injustice, and a purchaser might have payment of the consideration money enforced upon him, and yet be disabled from procuring the property for which he paid it. Although many nice distinctions are to be found in the books upon the question whether the covenants or promises of the respective parties to the contract are to be considered independent or dependent, yet it is evident the inclination of the courts has strongly favored the latter construction, as being obviously the most just. The seller ought not to be compelled to part with his property without receiving the consideration, nor the purchaser to part with his money without an equivalent in return. Hence, in such cases, if either a vendor or a vendee wish to compel the other to fulfill his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement on his part, or a tender and refusal; and an averment to that effect is always made in the declaration upon contracts containing dependent undertakings, and that everment must be supported by proof, and that the one now before the court must be considered a contract of this description cannot admit of a doubt." The principles there enunciated have since been generally followed by the courts of this country. For a very full review of the English and American decisions upon this question, see Lester v. Jewett, 11 N. Y. 453. See, also, Kane v. Hood, 13 Pick 281; Swan v. Drury, 22 Pick. 485; Williams v. Healey, 3 Denio, 363; Grant v. Johnson, 5 N. Y. 247; Parker v. Parmele, 20 Johns. 130; Galvin v. Prentice, 45 N. Y. 162; Dunham v. Pettee, 8 N. Y. 508; Smith v. Lewis, 26 Conn. 110; Clark v. Weis, 87 Ill. 438; Wagon Co. v. Crocker, 4 Fed. 578.

The counsel for respondent so fully and clearly states the theory of respondent that we insert, substantially, a portion of

the counsel's argument:     "The object the subscribers had when they entered upon this scheme must be constantly borne in mind.   By doing this no difficulty can possibly arise in arriving at the manifest intention of the parties.   It is manifest that the McCray system of cold storage, and the right to use it, is a vital and absolutely necessary part of this creamery,—one that cannot be dispensed with, in order to operate the plant.   Without it, the creamery is of little practical value to the subscribers, and of no value at all as a creamery.   It would be doing violence to the language employed in the covenant quoted to hold that the subscribers did not intend to insist on having a deed for this patent before paying over their money.   If this creamery had been completed in all respects as required by the contract, except the furnishing of this patent deed, the subscribers could not have gone on in the operation of this plant without running imminent danger of being perpetually enjoined, and rendering themselves liable to heavy damages and penalties under the provisions of section 4941 of the Revised Statutes of the United States, and probably other provisions of the patent laws.   It must be assumed that the sub scribers acted in this matter as reasonably prudent business men, and they knew what they wanted, when they entered into this contract.   If this position is not correct, then we must believe (1) that they heedlessly contracted with plaintiffs, without the least regard as to whether they could operate the plant, or not, after the completion thereof, for the contingency of not getting this deed must, reasonably, have occurred to them when they signed the contract; (2) that  *  *  *  they were willing to go to a foreign jurisdiction (plaintiffs being residents of Chicago) to sue plaintiffs for a breach of this covenant, should a suit become necessary.   It cannot be contended for a moment that the subscribers ever intended to impose such burdens upon themselves.   Neither the language employed in this particular covenant, nor anywhere in the contract, manifests such intent.   As to whether a covenant is dependent or inde-

pendent, as I have already stated, is one of intent of the parties; and this intent where the language is at all doubtful in meaning, must be gathered from the situation surrounding the contracting parties. Tested by this principle, it is inconceivable how these subscribers could have ever intended not to insist on a full compliance on plaintiffs' part before paying over their money. The scheme is of such a character and magnitude, and the amount to be paid for the plant so large, as to entirely repel the presumption that the subscribers ever meant to leave the question as to when, if ever, they should get this deed, to an uncertainty,—to a lawsuit, or perhaps to a series of lawsuits, in a foreign jurisdiction, upon this covenant, taking the risk of all the uncertainties of such litigation. Another practical difficulty presents itself, viz. in the event of a suit on this covenant for a failure to furnish this deed, who must sue? Each subscriber, individually, or the thirteen subscribers, collectively? If it be held that each subscriber is liable individually, without reference to his cosubscribers, then it logically follows that each subscriber must also individually assert his rights against plaintiffs for any breach of this contract. A suit on this covenant presents two formidable difficulties: (1) It would be next to impossible to suggest any satisfactory and just measure of damages, and this must be so from the nature of the case, for the profits the subscribers—or, rather, each of them—might have made, had the creamery been operated, would be difficult, if not impossible, to determine. (2) It would compel each subscriber (if the liability is individual) to begin a suit against plaintiffs in a foreign jurisdiction for his one-thirteenth share of damages sustained. No such hardship should be imposed on these subscribers, except for weighty and convincing reasons. I think that I have shown that no such reasons suggest themselves." We think there is great force in this reasoning, and that counsel clearly shows, from the contract itself, that the intention to make the stipulation a dependent one is too clear for argument, and that he further

shows the necessity of a patent deed for the cold-storage part of the building, as a part of the building itself. To further illustrate this question: Suppose the contractors had agreed to erect this building, to furnish all material and labor, and to furnish the subscribers with satisfactory proof that all material and labor were paid for or secured, so that there could not be a lien upon the building, and that, when completed, the subscribers would pay the sum of $6,500. Would any court hold that when the building was completed the contractors could recover the money agreed to be paid, without proof that all claims for material and labor were paid or secured? We think not. The burden of proving that all conditions precedent had been complied with would rest upon the contractors, and must be made before they would be entitled to recover. In the case at bar, we may presume, from the terms of the contract, that the cold-storage part of the building could only be operated by the subscribers upon obtaining a license or patent deed from the holders of the McCray patent. Upon what principle, then, can the subscribers be required to pay for the building until the patent deed the contractors stipulated to furnish had been so furnished? To give the subscribers a building which they would have no right to use, by reason of the patentee's right's would be of but little advantage to them. Appellants say this right could have been obtained for a trifling sum,—$30 or $40. Upon what this statement is based does not appear; but, if such is the fact, why did not appellants obtain and furnish it, in accordance with their contract? It is not at all certain that if the subscribers had occupied the building, and paid the contract price,—$6,500,—they could have procured the patent deed for any such trifling sum. At least, there is no evidence that such would have been the case. Our conclusion is that the agreement to furnish the patent deed was a dependent agreement, and that the appellant's were not entitled to a verdict, under any circumstances, without proof of a tender of such patent deed, or at least evidence to show that they were ready

and willing, and in a condition, to perform the same, and an offer to perform. The failure to make this proof was a fatal objection to their recovery, and the court properly refused to disturb the verdict, or grant a new trial.

The other questions presented and discussed, we do not deem it necessary to consider or decide at this time. The judgment of the court below is affirmed.